# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

In re:

KRAZ, LLC,

      Debtor.

_____/

KRAZ, LLC,

      Appellant,

v.                                                                    Case No. 8:17-cv-01555-TPB
                                                          Bankr. No. 8:15-bk-7039-CED
                                                          Bankr. Adv. No. 8:15-ap-655-CED

BRANCH BANKING AND TRUST
COMPANY,

      Appellee.

_____/

## <u>ORDER</u>

This case is before the Court on appeal from the bankruptcy court's final

judgment and on review of the bankruptcy court's proposed findings of fact and

conclusions of law.[1]  The case has been fully briefed.  After reviewing the parties'

briefs, the court file, and the record, the court finds as follows:

---

[1] The notice of appeal (Doc. 57) identifies the following orders and judgments for review:
the bankruptcy court's June 10, 2016 "Order Granting Partial Summary Judgment in
Favor of Defendant as to Counts III, V, VI, and IX" (Doc. 62-307); the bankruptcy court's
April 18, 2017 "Findings of Fact and Conclusions of Law" (Doc. 62-385); the district court's
August 10, 2020 "Order" (Doc. 38) (the decision of this Court in a prior appeal); the
bankruptcy court's January 24, 2023 "Findings of Fact and Conclusions of Law on Remand"
(Doc. 62-414); and the Final Judgment on Remand on Count I of Debtor's Second Amended
Complaint (Doc. 62-437).

## Background

The facts of the case are relatively straightforward.  But they have generated almost ten years of bankruptcy proceedings and hundreds of docket entries.  This is now the second appeal to this Court from a final judgment of the bankruptcy court, and the case appears destined for the Circuit Court of Appeals.

### *Facts*

In 2006, Colonial Bank loaned appellant Kraz, LLC $5,182,280, secured by a mortgage on real property that Kraz used for its commercial self-storage business. The loan required monthly interest payments, followed by a period of monthly principal and interest payments, and a final balloon payment.  Kraz made monthly payments until the bank declared it in default in 2009.  Colonial Bank failed, the Federal Deposit Insurance Corporation took over its assets, and appellee Branch Banking and Trust Company ("BB&T") purchased the Kraz loan.[2]

In 2010, BB&T filed a foreclosure suit against Kraz in Florida state court. That action ended in 2012 with a judgment in Kraz's favor determining that Colonial Bank had improperly declared Kraz in default and BB&T had "improvidently" sought foreclosure.  The state court reinstated the loan *nunc pro tunc* to June 30, 2009, extended the maturity date to fourteen months from the effective date of the judgment, and directed Kraz to resume loan payments after the parties agreed to a new payment schedule.  BB&T appealed, and the District Court

---

[2]  In 2019, BB&T and SunTrust Bank merged to form Truist Bank.  The Court in this Order will continue to refer to appellee as "BB&T" for the sake of clarity and convenience.

of Appeal affirmed the judgment for Kraz.  Kraz resumed payments.  The final balloon payment was due on April 28, 2015.

In October 2014, iStorage expressed an interest in purchasing the property from Kraz, and ultimately offered $5,175,000.  On December 24, 2014, BB&T provided Kraz with an estoppel letter stating that the payoff amount for the loan was approximately $6.9 million.  Kraz contended that this amount was inflated by the inclusion of interest and attorney's fees to which BB&T was not entitled.[3]  Kraz further contended – and, as discussed below, the bankruptcy court found – that BB&T's failure to provide an accurate estoppel caused the sale to iStorage to fall through.  Kraz thereafter filed a Chapter 11 bankruptcy petition.

### *Procedural History*

<u>Pretrial Proceedings</u>

BB&T filed a proof of claim.  Kraz responded by filing an adversary complaint objecting to BB&T's claim and asserting various affirmative claims against BB&T.  Kraz's second amended complaint asserted the following claims: objection to BB&T's proof of claim (Count I), breach of contract (Count II), fraud (Count III), constructive fraud (Count IV) fraudulent misrepresentation (Count V), negligent misrepresentation (Count VI), slander of title (Count VII), tortious interference (Count VIII), and willful violation of the automatic stay (Count IX).

---

[3]  Between October 2012 and December 2014, Kraz had requested and received from BB&T four estoppel letters stating the amount of the debt.  Kraz alleges that all of them were inflated.  It appears undisputed for purposes of this appeal that the payoff amounts stated in BB&T's estoppel letters were incorrect in light of the rulings in the state court foreclosure action.

(Doc. 61-133).  On June 10, 2016, the bankruptcy court granted BB&T's motion for partial summary judgment, eliminating Kraz's claims for fraud, fraudulent misrepresentation, negligent misrepresentation, and violation of the automatic stay.[4]  (Doc. 62-307).  This left for determination (1) Kraz's objection to the inclusion in BB&T's claim of amounts for post-maturity default interest and real estate taxes, and (2) Kraz's affirmative claims against BB&T for breach of contract, constructive fraud, tortious interference, and slander of title.

Trial and Judgment

The case was tried in the bankruptcy court on June 13-14, 2016, and June 20, 2016.  On April 18, 2017, the bankruptcy court entered findings of fact and conclusions of law.  (Doc. 62-385).  The court found that Kraz intended to sell its property to iStorage and thereby pay off the BB&T loan, but BB&T's inflation of the loan balance in the December 2014 estoppel letter prevented the sale and thereby prevented Kraz from tendering the balloon payment.  Because BB&T had caused the default, the court reasoned, BB&T could not recover claimed post-maturity default interest.  *See* (Doc. 62-385 at 11-14, 19-20).

Turning to BB&T's claim for recovery of approximately $290,000 in real estate tax payments, the bankruptcy court described BB&T's evidence as less than "compelling."  (*Id*. at 28).  The court, however, ultimately decided BB&T was barred

---

[4] The bankruptcy court's summary judgment order provided that it would constitute "findings and recommendations to the District Court with respect to entry of final judgment" for BB&T on these claims.  (Doc. 62-307 at 2).

from claiming these amounts as a matter of *res judicata* based on the final judgment in the state foreclosure action.

The bankruptcy court ruled for Kraz on its breach of contract claim, finding that BB&T's breach of its contractual duty to provide accurate estoppels caused the sale to iStorage to fall through. The bankruptcy court found that, had the sale gone through, Kraz could have avoided foreclosure and bankruptcy, and therefore Kraz was entitled to recover as breach of contract damages the fees and costs it had incurred in the bankruptcy case. The bankruptcy court, on the other hand, ruled against Kraz on its claims for constructive fraud, slander of title, and tortious interference.

On June 26, 2017, the bankruptcy court entered a final judgment based on its findings and conclusions. (Doc. 62-391). The Court allowed BB&T's claim but excluded default interest and real estate taxes based on Kraz's objections. The court further deducted from Kraz's debt to BB&T the $1,180,000 in damages it found Kraz had suffered from BB&T's breach of contract. After deducting payments made by Kraz, the bankruptcy court's judgment provided BB&T with a secured claim totaling $3,192,178.52 as of June 18, 2017. The court entered judgment for BB&T on Kraz's claims for constructive fraud, slander of title, and tortious interference. Pursuant to its earlier summary judgment order, the bankruptcy court also entered judgment for BB&T on Kraz's claims for fraud, fraudulent representation, and violation of the automatic stay. BB&T appealed.

Sale of the Property

In December 2017, while Kraz's appeal to this Court was pending, Kraz

obtained the bankruptcy court's permission to sell the property to a buyer free and

clear of BB&T's lien. *See* (Doc. 60-415). As discussed in more detail below, the

bankruptcy court required Kraz to place $2,306,457 from the sale proceeds in

escrow, subject to BB&T's lien, pending final resolution of the matters determined

by the bankruptcy court's judgment after BB&T's appeal. The sale took place on

March 27, 2018. It appears undisputed the sale price was $6,450,000. *See* (Doc. 62-

436 at 3). BB&T was paid $3,045,182.64 from the sale proceeds, an amount which

is not disputed, and $2,306,457 was placed in escrow.

*Kraz I*

BB&T prevailed on its appeal from the bankruptcy court's judgment. *See In

re Kraz, LLC*, 626 B.R. 432 (M.D. Fla. 2020) (*Kraz I*). Judge Whittemore held that

the 2014 estoppel letter "did not modify Kraz's contractual obligations to pay post-

maturity default interest" and that there was no record evidence to support a

finding that BB&T prevented Kraz from tendering the balloon payment when it was

due. *Id*. at 438, 440. Accordingly, the Court reversed the bankruptcy court's ruling

that BB&T was not entitled to post-maturity default interest. The Court also ruled

that *res judicata* did not bar BB&T from seeking reimbursement for property tax

payments. *Id*. at 440-42. Finally, the Court held that the bankruptcy court lacked

authority to enter final judgment on the breach of contract claim. *Id*. at 444-45.

The district court therefore vacated the bankruptcy court's final judgment and remanded the case to the bankruptcy court to determine the merits of BB&T's claim for property taxes and enter to proposed findings of fact and conclusions of law with regard to Kraz's contract claim.  Kraz moved for rehearing, which the district court denied in a written opinion.  *In re Kraz, LLC*, No. 8:17-cv-1555, 2020 WL 6082716 (M.D. Fla. Oct. 15, 2020).

<u>Proceedings on Remand</u>

Judge Williamson had presided over the bankruptcy case, but he passed away in November 2022.  The case was then assigned to Chief Bankruptcy Judge Caryl E. Delano and on January 24, 2023, she entered an order titled "Findings of Fact and Conclusions of Law on Remand."  (Doc. 62-414).  This order addressed the remaining issues on BB&T's proof of claim (Count I) in light of the district court's rulings as to default interest and property tax payments.  The court ruled that BB&T was entitled to recover property taxes in the amount of $288,091.74 and directed the parties to confer regarding the form of a proposed final judgment.

The order also included proposed findings of fact and conclusions of law on Kraz's breach of contract claim (Count II).  The court noted that Kraz had the burden of proving that BB&T's breach of contract in failing to provide an accurate estoppel letter caused Kraz's damages, which consisted of the fees and costs Kraz incurred in the ensuing bankruptcy proceeding.  The court held that it was bound by the district court's ruling in *Kraz I* that the record evidence did not support Kraz's claim that BB&T prevented Kraz from tendering the balloon payment.  The

bankruptcy court concluded, "[b]ecause this Court is bound by the District Court's ruling, the Court concludes that BB&T's breach of its obligation to provide an accurate estoppel letter was not the cause of Kraz's filing bankruptcy and its incurrence of $1.18 million in fees and costs." (*Id.* at 18-19). The court accordingly entered a proposed conclusion that BB&T was entitled to judgment on Kraz's claim for breach of contract. Kraz filed an objection to the bankruptcy court's proposed findings and conclusions, and BB&T filed a response. (Docs. 62-415; 62-418).

The bankruptcy court then considered competing submissions by the parties as to the form of the final judgment on BB&T's claim based on Kraz's debt. As discussed in detail below, the parties' disagreement focused on the amount of the debt owed by Kraz. In June 2023, the bankruptcy court entered final judgment for BB&T in the amount of $2,579,885.64, accruing interest at 5.08% per annum from March 28, 2018. (Doc. 62-437). Kraz appealed to this Court.

## Legal Standard

### *BB&T's Claim*

The district court functions as an appellate court when reviewing final judgments and certain interlocutory orders and decrees of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994); 28 U.S.C. § 158(a). The bankruptcy court's legal conclusions are reviewed *de novo*. *Bunyan v. Remick*, No. 8:18-cv-1519-T-36, 2019 WL 4805428, at *2 (M.D. Fla. Oct. 1, 2019) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009)). "The district court must accept the bankruptcy court's factual findings unless they are clearly

erroneous." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996).  A finding is not "clearly erroneous" unless the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

### Kraz's Breach of Contract Claim

The bankruptcy court entered proposed findings of fact and conclusions of law on Kraz's claim for breach of contract.  A bankruptcy court's proposed findings of fact and conclusions of law are reviewed *de novo*.  *See Ogier v Johnson*, No. 1:13-cv-1490-WSD, 2013 WL 6843476, at *6 (N.D. Ga. Dec. 27, 2013).

### Summary Judgment

The Court reviews a bankruptcy court's grant of summary judgment *de novo*, using the same standard applied by the bankruptcy court.  *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment. *Id*.  The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of

material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Law of the Case Forecloses Kraz's Arguments on Issues I - IV and VI – IX.*

Kraz raises ten issues on appeal.[5] Most of its arguments directly or indirectly attack rulings by Judge Whittemore in *Kraz I*, the prior appeal to this Court. Under the doctrine of law of the case, legal rulings in a prior appeal are binding in a subsequent appeal and will not be revisited. *See Joshi v. Fla. State Univ. Health Ctr.*, 763 F.2d 1227, 1231-32 (11th Cir. 1985) (citing *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984); *In re The Charter Co.*, 92 B.R. 510, 513 (M.D. Fla. 1988). Law of the case is subject to three recognized exceptions: (1) where there is new evidence on remand, (2) where there has been an intervening change in the law, and (3) where the rulings in the prior appeal constituted clear error and following them would work a manifest injustice. *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985).

Kraz points to no change in the law or new evidence. The remaining exception for cases of clear error and manifest injustice imposes an "exacting"

---

[5] Kraz originally numbered its issues on appeal from I to XI. *See* (Doc. 62-439). Issue X was withdrawn, and the tenth issue is referred to as "Issue XI" by both the parties and the Court. *See* (Doc. 68 at 11).

standard and is "rarely invoked." *Cox Enterprises, Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). The prior ruling must be "more than just maybe or probably wrong;" rather, it must strike the court as wrong "with the force of a five-week-old, unrefrigerated dead fish." *Id.* at 1272 n.92 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). It must be "so clearly erroneous that [the court] cannot construe it as a reasoned outcome." *Id.* at 1272.

In *Kraz I*, Judge Whittemore prepared a detailed and carefully reasoned opinion concluding that Kraz remained obligated to pay post-maturity interest notwithstanding BB&T's failure to provide an accurate estoppel. He addressed in detail, both in his original opinion and in a written opinion on rehearing, whether the record evidence supported a finding that BB&T prevented Kraz from tendering payment before concluding it did not. *See Kraz I*, 626 B.R. at 440; *Kraz I*, 2020 WL 6082716 at *2 n.2. Judge Whittemore also explained his reasons for concluding the judgment of the state court in the foreclosure action did not bar BB&T's claim for property taxes under principles of *res judicata*. *See Kraz I*, 626 B.R. at 440-43. Even if one or more of these rulings was arguably erroneous, none was clearly erroneous under the standards set forth above, and the Court declines to depart from these rulings in this appeal. Therefore, the law of the case doctrine applies and forecloses Kraz's arguments on Issues I through IV and VI through IX, as follows:

Issues I through IV and IX

Kraz's arguments on these issues challenge, among other things, this Court's rulings in *Kraz I* that BB&T was entitled to default interest, that BB&T did not prevent Kraz from selling the property or paying off the loan, and that *res judicata* did not bar BB&T's claim for real estate taxes. Kraz's argument on each of these issues directly attacks the conclusions of the Court in *Kraz I*. Kraz expressly begins each argument by asserting "the district court erred" in deciding the issue. Kraz's arguments on these issues are foreclosed by law of the case for the reasons stated above.[6]

Issue VI

Kraz argues that BB&T's failure to provide accurate estoppels constituted a prior material breach that discharged Kraz from its contractual duty to pay post-default interest. This argument implicitly attacks the legal ruling in *Kraz I* that BB&T's failure to provide accurate estoppel letters did not discharge Kraz's contractual obligation to pay default interest. The *Kraz I* ruling constitutes the law of the case and forecloses Kraz's argument on this point.

---

[6] Kraz also briefly argues in Issue IX that the bankruptcy court erred on remand when it found BB&T entitled to recover *ad valorem* tax payments without conducting an evidentiary hearing to determine whether BB&T made the payments using funds collected by a receiver for the property. While the evidence was conflicting, the bankruptcy court's finding on this issue is not clearly erroneous, and Kraz did not argue below that another evidentiary hearing was required on this issue.

Issue VII

Kraz argues that the bankruptcy court erred in concluding that Kraz had failed to establish damages from BB&T's breach of contract by failing to provide accurate estoppel letters. Although this argument is facially directed to the bankruptcy court's proposed finding on remand rather than to the *Kraz I* appellate ruling, this issue is also controlled by *Kraz I*. Kraz's damage theory was that BB&T's failure prevented it from selling or refinancing the property and thereby paying off the loan, which in turn caused Kraz's bankruptcy filing and attendant expenses, which constituted Kraz's claimed contract damages. *See* (Doc. 61-133 at ¶¶84-85). *Kraz I*, however, held that the record evidence did not support a finding that BB&T's failure to provide accurate estoppels prevented Kraz from selling the property or tendering the balloon payment when due. It follows that BB&T's failure to provide accurate estoppels also did not cause Kraz's bankruptcy and resulting expenses. The bankruptcy court was bound to apply the *Kraz I* ruling, and it therefore correctly concluded that Kraz had failed to show contract damages.

Issue VIII

Kraz argues that the district court in *Kraz I* and the bankruptcy court on remand erred by failing to find that Kraz was entitled to damages in the form of attorneys' fees and costs under § 701.04(1), *F.S.* Kraz cites *Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375 (Fla. 3d DCA 2019). The district court in *Kraz I* expressly rejected this argument and distinguished *Laptopplaza. See In re*

*Kraz, LLC*, 2020 WL 6082716, at *2 & n.1.  This argument is therefore foreclosed by law of the case.

### The Bankruptcy Court Properly Granted Summary Judgment for BB&T on Kraz's Fraud Claims (Issue V).

In Issue V, Kraz argues that the bankruptcy court erred by granting summary judgment against it and in favor of BB&T on Count III (fraud), Count IV (constructive fraud), and Count V (fraudulent misrepresentation) of Kraz's second amended complaint.  BB&T argues in response that Kraz's arguments on the bankruptcy court's summary judgment rulings are barred under law of the case because Kraz failed to appeal those rulings or object to them in *Kraz I.  See, e.g., United States v. Garzon*, 223 F. App'x 899, 901 (11th Cir. 2007) (holding that "lower court rulings that have not been challenged on a first appeal will not be disturbed in a subsequent appeal").  Kraz argues that law of the case does not apply because the summary judgment rulings merged into the final judgment entered by the bankruptcy court in 2017, and when that judgment was later vacated by the district court in *Kraz I,* Kraz's ability to challenge the summary judgment rulings sprang back to life.

The Court is not convinced by Kraz's argument.  BB&T, however, does not explain why Kraz, an appellee, was required to cross-appeal the adverse summary judgment rulings as to its fraud claims, given that it prevailed on other theories at trial and obtained a favorable judgment.  *See, e.g., Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995) (holding that the appellee did not waive an argument by failing to raise it in a prior appeal).  The Court will

therefore assume without deciding that law of the case does not apply and will address Kraz's substantive arguments.

First, Kraz has misidentified the claims addressed by the bankruptcy court's summary judgment order.[7] The court granted summary judgment on Kraz's claims for fraud (Count III), fraudulent misrepresentation (Count V), and negligent misrepresentation (Count VI).[8] (Doc. 62-307). Contrary to Kraz's argument, however, the bankruptcy court's summary judgment order did not dispose of Kraz's constructive fraud claim (Count IV). That claim was decided only after trial and on a different ground from the one Kraz addresses in this appeal. The Court therefore will first address the bankruptcy court's summary judgment order as to Counts III and V and then for the sake of completeness address the bankruptcy court's findings after trial as to Count IV.

The bankruptcy court ruled that Counts III and V, for "fraud" and "fraudulent misrepresentation," respectively, required reliance by Kraz, and that there was no evidence that Kraz relied on the bank's false estoppel letters. As the bankruptcy court put it, assuming that BB&T's estoppel letters were false, they

---

[7] Kraz's confusion may stem from the fact that the discussion at the summary judgment hearing at times misidentified Count IV as one of the counts at issue. *See* (Doc. 61-406 at 14-15, 30). It is, however, clear from the discussion at the hearing as well as the bankruptcy court's summary judgment order that the claims on which the bankruptcy court granted summary judgment were fraud (Count III), fraudulent misrepresentation (Count V), negligent misrepresentation (Count VI), and violation of the automatic stay (Count IX).

[8] Kraz does not expressly challenge the bankruptcy court's grant of summary judgment on Count VI, a claim for negligent misrepresentation, but even if it had done so, the bankruptcy court's ruling was correct for the same reasons discussed herein in connection with Kraz's other fraud claims. As noted above, the summary judgment order also disposed of Count IX, a claim for violation of the automatic stay, a ruling Kraz does not challenge.

were "known to be false by [Kraz], and you can't rely on something you know to be

false." (Doc. 61-406 at 30). Kraz argues on appeal that the bankruptcy court's view

of "fraud" was too narrow, and the term can be applied to situations such as

fraudulent conveyances, which do not involve misrepresentations (and therefore do

not require reliance by the plaintiff). *See, e.g., Husky Int'l Electronics, Inc. v. Ritz*,

578 U.S. 355, 359-67 (2016) (holding that the term "actual fraud" as used in 11

U.S.C. § 523(a)(2)(A) includes fraudulent transfers).

Kraz's argument fails because the claims it asserted were for common law

fraud and misrepresentation. *See* (Doc. 61-133 at ¶¶ 88, 101, 109). These claims

require reliance by the plaintiff. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338 So.

3d 831, 838 (Fla. 2022) ("[R]egardless of the form of the defendant's fraudulent

conduct, reliance is an indispensable aspect of proving causation in a fraud claim.");

*Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (holding that "consequent injury by

the party acting in *reliance* on the representation" is an element of fraudulent

misrepresentation) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Kraz also briefly argues that reliance is an issue of fact, but neither in

opposing summary judgment in the bankruptcy court nor here on appeal does Kraz

point to evidence that would have supported a finding in its favor on that issue.

Kraz's arguments to the bankruptcy court attempted to stretch the concept of

"reliance" to situations where a false representation impacts or constrains the

plaintiff's course of action in some way, but that is plainly insufficient. For

actionable fraud, the plaintiff must have "received, believed, and acted upon" a

misrepresentation by the defendant. *Prentice,* 338 So. 3d at 838 (quoting J. Goldberg, et al., *The Place of Reliance in Fraud,* 48 Ariz. L. Rev. 1001, 1007 (2006)). Accordingly, the bankruptcy court's grant of summary judgment for BB&T on Counts III and V was correct.

As noted above, Kraz incorrectly identifies Count IV, a claim for constructive fraud, as included in the bankruptcy court's grant of summary judgment for BB&T. In fact, this count was addressed by the bankruptcy court in its Findings of Fact and Conclusions of Law after trial.[9] The court ruled that constructive fraud requires a fiduciary or other confidential relationship, which did not exist between Kraz and BB&T. *See, e.g.,* *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 764 F.3d 1327, 1339 (11th Cir. 2014) (holding that, under Florida law, the torts of constructive fraud and breach of fiduciary duty "rest on the same foundation[.]"); *Taylor v. Kenco Chem. & Mfg. Corp.,* 465 So. 2d 581, 589 (Fla. 1st DCA 1985) ("Constructive fraud is . . . 'deemed to exist where a duty under a confidential or fiduciary relationship has been abused.'") (quoting *Harrell v. Branson,* 344 So. 2d 604, 606 (Fla. 1st DCA 1977)). There is no allegation in Kraz's adversary complaint,

---

[9] For the same reason that Judge Whittemore found the bankruptcy court lacked authority to enter a final judgment as to Kraz's breach of contract claim, the court lacked authority to enter final judgment on the constructive fraud claim. The Court therefore treats the bankruptcy court's findings and conclusions on this issue as proposed findings and conclusions and reviews them *de novo. See Order of Reference of Cases Arising Under Title 11, United States Code, and Designating Bankruptcy Judges to Conduct Jury Trials and Act as Settlement Judges,* No. 3:21-mc-1-TJC (Oct. 29, 2024) ("The District Court may treat any order of the Bankruptcy Court as proposed findings of fact and conclusions of law if the District Court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution.").

and there was no evidence presented to the bankruptcy court, that Kraz and BB&T were in a fiduciary relationship. Kraz does not address the bankruptcy court's ruling on this issue or explain why the court erred in that regard. The Court therefore rejects Kraz's arguments as to constructive fraud. *See, e.g.*, *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) ("Constructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other."). The bankruptcy court's ruling on constructive fraud was correct.[10]

### *The Bankruptcy Court Properly Calculated the Amount of the Final Judgment for BB&T (Issue XI).*

The final disputed issue in this appeal is the amount of the final judgment for BB&T on its claim. The bankruptcy court entered final judgment awarding BB&T $2,579,885.64, as of March 28, 2018, with interest of 5.08% per annum from that date. (Doc. 62-437). BB&T argues that is the correct amount under the plan of reorganization and applicable law based on the legal rulings it obtained directing the inclusion of amounts for post-default interest and property tax payments and eliminating any contract damages.

Kraz does not contest and thereby concedes that the amount proposed by BB&T and accepted by the bankruptcy court was the amount to which BB&T would have been entitled under the confirmed plan and applicable law. Kraz argues that the judgment amount should nevertheless be limited to $2,306,457, based on two

---

[10] The bankruptcy court also ruled against Kraz on its claims for slander of title and tortious interference. Kraz does not challenge these rulings on appeal.

estoppel letters provided by BB&T in connection with Kraz's sale of the property several years earlier.

Specifically, in the fall of 2017, Kraz sought permission from the bankruptcy court to sell the property free and clear of BB&T's lien and to use the proceeds to pay BB&T. At that point, the judgment in favor of Kraz was on appeal, and the total amount of the debt was therefore disputed. In a letter dated November 20, 2017, BB&T consented to the sale on the condition that Kraz pay from the sale proceeds something over $3 million, which was undisputedly owed to BB&T, and also place $2,306,457 from the sale proceeds in escrow. (Doc. 62-427). This last sum consisted of the amounts still in dispute at that time, *i.e.*, Kraz's contract damages, default interest, and real estate taxes. Final disposition of the money placed in escrow would turn on the resolution of the pending appeal.

The bankruptcy court granted Kraz's motion to sell the property and, tracking BB&T's November 20, 2017, estoppel letter, directed that BB&T receive at closing $3,108,158.82 plus a per diem and an adjustment for payments made by Kraz between November 20, 2017, and the date of the closing. (Doc. 60-415). The order further directed that, as provided in BB&T's letter, $2,306,457 would be placed in escrow pending a final resolution of the judgment then on appeal. The court's order further provided that "[t]he parties otherwise reserve all rights including all rights in the appeal," and that the court reserved jurisdiction "to interpret and enforce the order." (*Id*. at ¶¶4, 6).

BB&T provided another estoppel letter on February 27, 2018, stating that the amount due from the sale proceeds as of March 12, 2018, would be $3,038,339.12, with a per diem of $427.72 from that date forward, and requiring once again that Kraz escrow an additional $2,306,457 from the sale. (Doc. 62-428). The sale took place on March 27, 2018. It appears undisputed the sale price was $6,450,000. BB&T was paid $3,045,182.64 from the sale proceeds, an amount which is not disputed, and $2,306,457 was placed in escrow.

The prior appeal resolved the disputed issues in favor of BB&T, and the question became the amount of the judgment to which BB&T was entitled. The bankruptcy court entered final judgment for BB&T in the amount of $2,579,885.64 as of March 28, 2018, with interest accruing from that point. (Doc. 62-437). As noted above, Kraz does not dispute that this would have been the correct amount of the judgment but for BB&T's November 2017 and February 2018 estoppel letters, which Kraz contends limit the amount of its remaining debt to the $2,306,457 BB&T required Kraz to place in escrow.

The burden is on the party asserting equitable estoppel of proving by clear and convincing evidence (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation by the party claiming estoppel, and (3) a detrimental change in position by that party caused by the representation and reliance. *In re Ferry*, No. 8:20-cv-1179-VMC, 2023 WL 2139382, at *7 (M.D. Fla. Feb. 21, 2023). To be clear and convincing, "evidence must be credible; the memories of the witnesses must be clear and without confusion; and

the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 n.4 (Fla. 1999) (quoting *In re Adoption of Baby E.A.W*, 658 So. 2d 961, 967 (Fla. 1995)).  The weight of the evidence must be such that "it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983).

Although the bankruptcy court did not address equitable estoppel directly, by entering judgment in accordance with BB&T's calculation, the court implicitly found that Kraz had failed to present evidence showing the elements of estoppel were met.  The Court reviews that implicit finding for clear error.  *See In re Sublett*, 895 F.2d 1381, 1387 (11th Cir. 1990) (reversing district court and reinstating bankruptcy court's implicit finding that attorney's fees were not incurred in litigation to protect lender's lien).  The Court concludes that the bankruptcy court's ruling was not clearly erroneous because Kraz failed to provide evidence showing that it reasonably relied on a representation by BB&T to its detriment.

At the outset, it bears note that Kraz provided no affidavits or other sworn testimony to the bankruptcy court in support of its estoppel argument.  On appeal, the only record evidence Kraz cites are the estoppel letters themselves and the bankruptcy court's order approving the sale.  But those letters do not unambiguously state the total amount owed, referring instead only to an immediate payment and to the amount of the escrow required by BB&T as a condition of its

consent to the sale.  Further, the bankruptcy court's sale order specified the amount

of the immediate payment and the amount of the escrow but also expressly provided

that the parties "otherwise reserve all rights."  Kraz had disagreed with BB&T's

estoppel letters in the past, and Kraz points to no evidence showing that, at the

time of the sale, Kraz in fact believed – reasonably or otherwise – that the total

amount it would ultimately owe to BB&T would be limited to the immediate

payment plus the escrow.

  In addition, there was no evidence that any reliance was detrimental to Kraz.

To the extent Kraz relied on the representations in BB&T's letters when it placed

$2,306,457 into escrow, Kraz offers no explanation how that reliance changed Kraz's

position for the worse.  It simply met the condition BB&T placed on its consent to

the sale of the property, thereby allowing the sale to go forward, to the benefit of

both BB&T and Kraz.  Nor has Kraz argued, much less offered proof, that the price

it negotiated for the sale of the property would have or could have been different

had the estoppel letter stated a higher payoff amount.  That Kraz in the end may

have been able to keep a smaller portion of the sale proceeds than it anticipated

does not constitute detrimental reliance.  *See In re Ferry*, No. 8:11-bk-10854-RCT,

2023 WL 6459460, at *8 (Bankr. M.D. Fla. Sept. 28, 2023).[11]

---

[11] Kraz argues that the bankruptcy court in *In re Ferry*, No. 8:11-bk-10854-RCT, 2020 WL
5746056 (Bankr. M.D. Fla. May 7, 2020), applied equitable estoppel in a situation similar to
that presented here.  But the decision Kraz cites was reversed on appeal by the district
court, which held that issues of fact existed with respect to the application of equitable
estoppel.  *See In re Ferry*, 2023 WL 2139382 at *6-9.  On remand, the bankruptcy court
found that the debtor had failed to prove by clear and convincing evidence that she had
detrimentally changed her position in reliance on the lender's estoppel letter.  *See In re
Ferry*, 2023 WL 6459460 at *8.  In particular, the parties stipulated that the property was

Kraz appears to argue that its detrimental reliance consisted of disbursing the remaining sale proceeds because it believed the amount in escrow would be sufficient to satisfy its debt to BB&T, and therefore it has no remaining assets with which to pay a judgment some $273,000 higher than the escrow. On this point, however, Kraz offers only the unsworn assertion of its counsel and no specifics as to what resources, if any, Kraz might have available to it. Moreover, if Kraz has no remaining assets, then it would not be able to pay the judgment even if Kraz's argument were accepted and the principal amount of the judgment were reduced to the amount of the escrow, *i.e.*, $2,306,457 as of March 28, 2018. That is so because the judgment includes interest running from March 28, 2018. Even as of the date of the June 2023 judgment, interest on $2,306,457 from March 28, 2018, would add hundreds of thousands of dollars to the debt owed by Kraz to BB&T.

Accordingly, the bankruptcy court's implicit finding that Kraz failed to show a basis for equitable estoppel by clear and convincing evidence was not clearly erroneous. The bankruptcy court's "Findings of Fact and Conclusions of Law on Remand" as to Issue XI and its judgment for BB&T are affirmed.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. The bankruptcy court's "Final Judgment on Remand on Count I of Debtor's Second Amended Complaint" (Doc. 62-437) is **AFFIRMED**.

---

sold for fair market value and the debtor failed to prove she could have obtained a higher sale price had the estoppel letter been different. *Id.*

2. The bankruptcy court's rulings on BB&T's motion for partial summary judgment as to Counts III, V, VI, and IX of the second amended complaint (Doc. 62-307), findings of fact and conclusions of law as to Counts IV, VII, and VIII of the second amended complaint (Doc. 62-385), and its proposed findings of fact and conclusions of law on remand as to Count II of the second amended complaint (Doc. 62-414) are **ACCEPTED**, **APPROVED** and **ADOPTED**.

3. The Clerk is **DIRECTED** to enter final judgment on Counts II, III, IV, V, VI, VII, VIII, and IX of the second amended complaint of Kraz, LLC in favor of Branch Banking and Trust Company (n/k/a Truist Bank) and against Kraz, LLC.

4. The Clerk is directed to transmit a copy of this Order to the bankruptcy court, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of June, 2025.

---

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**